# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MICHIGAN
# NORTHERN DIVISION

_____

JENNIFER FRANCE,

      Plaintiff,

v.

CHIPPEWA COUNTY;
JIM MARTIN, DON McLEAN,
ROBERT SAVOIE, and SCOTT
SHACKLETON,
in their personal and official
capacities,

      Defendants.

File No. 2:20-CV-00248

Hon.

_____

## COMPLAINT AND JURY DEMAND

_____

### Complaint

Plaintiff Jennifer France, by and through her attorneys, Pinsky, Smith, Fayette & Kennedy, LLP, states as follows:

### Jurisdiction, Venue, and Parties

1.    This is an action requesting that the Court remedy violations of the First Amendment of the U.S. Constitution, pursuant to 42 U.S.C. § 1983; related violations of Michigan's Whistleblowers' Protection Act ("WPA"), Mich. Comp. Laws § 15.361 *et seq.*; related violations of Michigan's Elliott-Larsen Civil Rights Act ("ELCRA"), Mich. Comp. Laws § 37.2101 *et seq.*; related violations of Michigan's

Open Meetings Act ("OMA"), Mich. Comp. Laws § 15.261 *et seq.*; and the related tort of violation of public policy under Michigan law.

2.     The Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1367.

3.     Plaintiff Jennifer France is a resident of Chippewa County, Michigan, and of the Western District of Michigan, Northern Division.

4.     Defendant Chippewa County ("the County") is a local unit of government organized pursuant to the laws of the state of Michigan; a state actor; and an employer of Plaintiff under state law. The County conducts its business throughout Chippewa County, which is located in the Western District of Michigan, Northern Division.

5.     Defendant Jim Martin is an elected member of the Board of Commissioners of Chippewa County, and is an individual who lives in Chippewa County, within the Western District of Michigan, Northern Division.

6.     Defendant Don McLean is an elected member of the Board of Commissioners of Chippewa County, and is an individual who lives in Chippewa County, within the Western District of Michigan, Northern Division.

7.     Defendant Robert Savoie is an elected member of the Board of Commissioners of Chippewa County, and is an individual who lives in Chippewa County, within the Western District of Michigan, Northern Division.

8.      Defendant Scott Shackleton is an elected member of the Board of Commissioners of Chippewa County, and is an individual who lives in Chippewa County, within the Western District of Michigan, Northern Division.

9.      Venue is proper within this judicial district under 28 U.S.C. § 1391(b).

<u>Factual Allegations</u>

*Plaintiff's Role as Chief Public Defender*

10.      Plaintiff is employed as the Chief Public Defender for Chippewa County and has held that position since January 1, 2017.

11.      The County has terminated Plaintiff's employment effective December 31, 2020, without cause. Defendants Martin, McLean, Savoie, and Shackleton, who constitute a majority of the Board of Commissioners of the County, voted on November 18, 2020 in favor of termination of Plaintiff's employment.

12.      As Chief Public Defender for the County, Plaintiff is charged with providing legal representation to indigent persons charged with a criminal offense in the County, representing prison inmates, and assisting with Friend of the Court Collection matters.  Plaintiff's job description includes the following duties of the Chief Public Defender:

- Supervises, directs, and evaluates assigned staff, processing employee concerns and problems, counseling, disciplining, and completing employee performance appraisals; provides directions, advice, and technical expertise.

- Coordinates department work activities; organizes and prioritizes department workload; reviews work assignments; monitors status of work in progress; inspects completed work; troubleshoots problem situations.

- Ensures departmental compliance with all applicable codes, laws, rules, regulations, standards, policies and procedures; initiates any actions necessary to correct deviations or violations.

- Ensures adherence to established safety procedures; monitors work environment and use of safety equipment to ensure safety of employees and other individuals.

- Represents clients in all Court proceedings; interviews law enforcement personnel, witnesses, correction officers, and others; engages in negotiations with Prosecutor and clients; prepares correspondence, press releases, and legal documents; gathers and analyzes case evidence; conducts research and reviews evidence, exhibits, reports, statements, etc.; appears and argues in court for arraignments, preliminary hearings, pre-trial motions, presents case, examines and cross examines witnesses;  issues subpoenas for witnesses to appear, testify, or provide evidence pertinent to case.

- Conducts and/or arranges for investigations; researches experts in a particular field.

- Updates and organizes files; maintains files and filing systems.

- Prepares and monitors annual budget; reviews office expenditures.

13.     In her role as Chief Public Defender, Plaintiff is also responsible for administering the Michigan Indigent Defense Commission ("MIDC") grant, which is the primary source of funding for the Chippewa County Public Defender Office.

14.     The MIDC grant provides funding from the State of Michigan. The MIDC requires strict compliance with its guidelines and reporting requirements in order for a public defender's office to continue to receive funding.

15.     Plaintiff has successfully managed the MIDC grant for over two years.

16.     Plaintiff has likewise been successful in all of her duties as the Chief Public Defender. Among other accolades, she has received recognition for her work from the Michigan State Bar Association, which recently appointed her to the State

Bar's Access to Justice Policy Committee, and from the National Association of Public Defenders, which selected Plaintiff as one of three nation-wide grant recipients.

17.     The State Bar of Michigan is the governing body for lawyers in the State of Michigan. Membership is mandatory for attorneys who practice law in Michigan.

18.     The conduct of attorneys in Michigan are governed by, among other rules and statutes, the Michigan Rules of Professional Conduct ("the Ethics Rules"). The Ethics Rules also govern the ways in which attorneys are required to fulfill their professional duties to their clients.  Attorneys are required to follow the Ethics Rules, and the State Bar can initiate discipline proceedings against attorneys who do not abide by the Ethics Rules.

19.     In addition, criminal defendants are entitled under the Sixth Amendment to the U.S. Constitution to "effective assistance of counsel," which provides another guideline for the responsibilities of attorneys representing persons charged with crimes.

*2018 Lawsuit*

20.     In December 2017, the County, via County Administrator James ("Jim") German, suspended Plaintiff for one week without pay. Mr. German alleged that the suspension was in response to Plaintiff hiring a contract attorney to write an interlocutory appeal without County authorization.

21.     Contrary to its policies, the County did not give Plaintiff a hearing or any opportunity to defend herself or to appeal the suspension decision.

22.     Plaintiff had (and continues to have) the authority to appoint contract attorneys based on the needs of the Public Defender's Office.

23.     Plaintiff's suspension came shortly after she reported concerns about a conflict of interest between the District Court Judge, Judge Eric Blubaugh, and the Circuit Court Judge, Judge Jim Lambros, arising out of Judge Blubaugh's long-term romantic relationship with Judge Lambros' sister. Plaintiff argued in court filings that it was a conflict of interest for Circuit Court Judge Lambros to adjudicate appeals of District Court Judge Blubaugh's orders when Judge Blubaugh was a de-facto brother-in-law to Judge Lambros.

24.     The contract attorney whom Plaintiff appointed was tasked with writing the interlocutory appeal that addressed the conflict-of-interest issue.

25.     When the County refused to give Plaintiff a hearing, she was forced to hire the undersigned counsel, who communicated with the County regarding the unlawful suspension.

26.     An attorney for Chippewa County and Mr. German notified Plaintiff's attorney that the County refused to reverse Plaintiff's suspension without pay.

27.     Accordingly, on March 7, 2018, Plaintiff filed a lawsuit against Chippewa County and County Administrator German in this Court, Case No. 2:18-CV-31 ("the 2018 Lawsuit"), alleging violation of Ms. France's right to due process of law under the Fourteenth Amendment of the U.S. Constitution, violation of

Michigan Whistleblowers' Protection Act ("WPA"), Mich. Comp. Laws 15.361 *et seq*, and imposition of discipline in violation of public policy. (Case No. 2:18-cv-00031, PageID.1-18.)

28.     In addition to raising this unlawful discipline, Plaintiff's 2018 Lawsuit also detailed how the County objected to the legally necessary steps Plaintiff took when her immediate predecessor, Robert Stratton, was elected to become the County Prosecutor, thus becoming the attorney for the opposing party to his former clients in the Public Defender's Office. After receiving State Bar guidance regarding the County's ethical obligations in that situation, Plaintiff raised the issue, and as a result, the County was required to bring in a special prosecutor to complete prosecution of defendants represented previously by Mr. Stratton when he was the Public Defender. Mr. German and other County officials vehemently opposed Plaintiff's actions to resolve the issue in this way because of the cost required by utilizing a special prosecutor, despite the fact that Plaintiff advised those concerned that this was what the ethical rules required.

29.     Plaintiff's 2018 Lawsuit was ultimately settled via an early settlement conference in July 2018, and as part of the settlement, the County paid Plaintiff compensation for the week's lost pay and an amount to compensate for her attorney's fees, as well as a requirement that the County remove the discipline from Plaintiff's employment file.

*Changes to County Terms and Conditions of Employment Designed to Hide Employee Complaints and Concerns*

30.     After the 2018 Lawsuit, the County implemented various changes to the terms and conditions of employment for non-union employees like Plaintiff. Upon information and belief, these changes were motivated by the 2018 Lawsuit and designed to attempt to make it harder for the County's non-union employees generally, and Plaintiff specifically, to challenge unlawful employment practices at the County or speak up about other matters of public concern. Moreover, upon information and belief, the changes were designed to attempt to limit employee challenges to a non-public arbitration forum so that citizens would be unaware of what was happening.

31.     The changes included statements that the employment was considered at-will, and that employees could be fired at any time, ending the long-standing practice that the County had of providing non-union employees the same "just cause" employment as its union workforce. Despite this change, the County kept in its employment policies for non-union employees a purported progressive discipline policy and a right to an appeal of adverse employment decisions.

32.     Specifically, Chippewa County Personnel Management Policy #240 details a progressive discipline process for employees, which provides that the County use "graduated penalties ranging through verbal warnings, written warnings, demotion, suspension without pay, and discharge."

33.     Policy #240 also purports to provide employees the opportunity to appeal discipline decisions, including termination from employment.

34.     Another change that the County made to the terms and conditions of employment for non-union employees like Plaintiff after the 2018 Lawsuit was instituting an arbitration clause. The County made it clear to employees that whether or not they signed the agreement, they would be subject to the arbitration clause if they wanted to continue to be employed. The arbitration clause purports to require that employment disputes may only be brought in arbitration, and that employees pay half the costs of such arbitration, unless they provide personal financial information to the County and successfully convince the County not to require the employee to pay half the costs, which typically amount to thousands of dollars.

*Continued Harassment and Retaliation*

35.     For the two years following the settlement until present day, Mr. German and others within the County Administration regularly harassed and mistreated Plaintiff, often in direct response to Plaintiff raising legitimate concerns about unlawful or unethical behavior by Mr. German or others within the County operating the criminal justice system.

36.     For example, Plaintiff documented her employment discipline and attempts to correct unacceptable behavior of the then-Deputy Public Defender, known herein as D.C., who reported to Plaintiff. Plaintiff eventually asked Mr. German that D.C. be terminated from his position, but Mr. German initially refused to fire him despite Plaintiff's recommendation and the overwhelming reasons for

doing so, berated Plaintiff for requesting the termination, and made false claims that D.C. filed complaints against Plaintiff.

37.     Mr. German likewise accused Plaintiff of "acting badly" because she appropriately raised the issue of his circumventing her office to appoint a contract attorney on a case for which the Public Defender's Office was conflicted. Mr. German's chosen attorney did not meet the requirements for a contract attorney under the MIDC grant, and Plaintiff had to report the incident to the MIDC.

38.     Additionally, Mr. German regularly insisted that Plaintiff include County Prosecutor Robert Stratton on all of her communications to the County Administrator. Despite her refusal to do so, upon information and belief, Mr. German regularly forwards her email messages to Mr. Stratton and shares other information from the defender's office with the prosecutor's office. Plaintiff repeatedly told Mr. German that this is a clear conflict of interest, as the defender and the prosecutor represent adverse parties, and the County and its citizens have legitimate interests in keeping the offices separate and independent. Mr. German dismissed her concerns and berated her for stating them. Mr. German also informed Plaintiff that he will still share her communications and information about the Public Defender's Office with Mr. Stratton. Plaintiff reported this ethical violation, which also implicates potential constitutional law violations, to the Michigan State Bar and the MIDC.

39.     As another example of Mr. German's behavior towards Plaintiff, when Plaintiff told Mr. German that she had received a grant from the National

Association of Public Defenders and that she was one of only three individuals in the entire country to be awarded the grant, Mr. German responded that Plaintiff "was nothing special."

40.     When the COVID pandemic hit, Plaintiff advocated for the county courts to hold Zoom, rather than in-person, hearings. She made her request following an in-person hearing in which she was in close contact with an out-of-town attorney who had traveled from Wayne County where, at the time, COVID infection rates were extremely high.

41.     The County courts did ultimately change to holding Zoom hearings, but initially refused to stream the hearings online to allow for public viewing. Plaintiff objected to this practice to Ms. Ojala, the State Court Administrator's Office ("SCAO"), and MIDC because court proceedings are required to be open to the public. Eventually, the County began to make the district court hearings available online to be viewed by the public, as required by state law. Circuit court hearings still are not accessible by the public.

42.     On June 9, 2020, counsel for Plaintiff sent a letter to Defendant Martin, Chippewa County Board of Commissioners Chairman on behalf of Plaintiff, outlining the harassment against Plaintiff and stating that Mr. German and others were retaliating against Plaintiff because she had repeatedly raised ethical and legal concerns regarding County practices and because she reported these concerns to public bodies when needed and advocated for the necessary changes.

43.     In the letter, Plaintiff's counsel also stated that Mr. German and others treated Plaintiff poorly, at least in part, because she is a woman.

44.     Counsel for Plaintiff received no response to this letter, and no one spoke with Plaintiff about it.

45.     On or about June 12, 2020, Plaintiff offered the position of Assistant Public Defender to Ashley Ball. Before Ms. Ball accepted the position, Mr. German called her and made disparaging remarks about Plaintiff, including stating that she and he did not get along and that Plaintiff was difficult to work with. Mr. German also made a vague remark about hoping that Plaintiff "won't be around much longer." Mr. German sounded intoxicated during the call and made other strange remarks about Ms. Ball buying his home.

46.     Despite that call from Mr. German, Ms. Ball accepted the job.

47.     Upon learning about Mr. German's call to Ms. Ball, on July 14, 2020, Plaintiff submitted an official complaint about Mr. German to Defendant Martin. In her complaint, Plaintiff relayed the details of Mr. German's call to Ms. Ball. She highlighted the impropriety of the call and of Mr. German's interference with the Public Defender's Office hiring process. Plaintiff also said that Mr. German's disparaging comments about her were unethical and unprofessional.

48.     Shortly after Plaintiff submitted her complaint, Defendant Martin spoke with Plaintiff and said that the County hired an investigator to look into her complaint. During this conversation, Plaintiff reiterated her concerns about ongoing harassment from Mr. German and stated that Mr. German's behavior is much

worse in the afternoons. This latter remark referenced the widely-held belief that Mr. German drinks alcohol at work and is sometimes intoxicated in the afternoons. Mr. Martin nodded his head yes in response to Plaintiff's comment.

49.     The County hired an attorney, Tom Evashevski, allegedly to investigate Plaintiff's complaint regarding Mr. German.

50.     On July 20, 2020, Plaintiff sent Mr. Evashevski a letter summarizing her complaints as well as multiple pages of documents and emails, outlining the ways in which Mr. German and other County officials had harassed retaliated against her.

51.     In her letter – among other examples of harassment and bad behavior – Plaintiff stated that Mr. German "tends to call people while intoxicated or email and go after them or send emails that do not make sense."

52.     Plaintiff also told Mr. Evashevski that she viewed Mr. German's behavior towards her as "sexism."

53.     Mr. Evashevski allegedly conducted an "investigation." Upon information and belief, Mr. Evashevski has reported Ms. France's complaints to Defendants. However, no report of his investigation has been made public, and there has been no reference to any confidential and/or privileged report being presented to the County Commission in any public meeting or in any other publicly-available information. No County official, nor anyone acting on the County's behalf, has addressed with her either the investigation or the serious complaints that she raised.

54.     For some time, Plaintiff has raised the issue that the method by which the County has run criminal arraignments violates the constitutional rights of defendants and violates court rules. The County schedules arraignments at 11:00 a.m. with minimal or no notice to defense counsel, often meaning that Plaintiff or other defense counsel has no opportunity to meet the client before the arraignment begins. A major problem with this is that Plaintiff or other defense counsel cannot prepare an argument to make an effective motion for pre-trial release and bond unless she can learn the necessary information from her client on the spot, whereas the Prosecutor has advance access to the file and all information he or his staff needs to oppose bond or argue for onerous bond conditions. While Plaintiff may make a motion if she learns information later which would permit a different decision on bond, she cannot make such a motion for at least two weeks, leaving pre-trial defendants in custody for at least that length of time when that arguably violates their rights. This practice itself violates state court rules and state law. Plaintiff raised this problem to Judge Eric Blubaugh, Mr. German, and Tina Ojala, the Court Administrator, and asked for changes, but Defendant County has refused to alter to the procedure. After her concerns fell on deaf ears in the County, Plaintiff raised the issue to both the State Court Administrator's Office and MIDC.

55.     After the COVID pandemic began and Defendant County began to hold arraignments on Zoom, the problem was exacerbated. Now the defendant, lawyers, and the judge are on Zoom together, and Defendant County either refuses to or is unable to place Plaintiff and her client in a separate breakout "room" on Zoom so

they may talk privately. Therefore, Plaintiff has absolutely no opportunity to speak privately to her client at an arraignment – who she is often meeting for the first time because of the lack of notice – and have an appropriate attorney-client-privileged conversation, much less prepare for the hearing ahead of time. Any attorney's ability to make an effective argument for bond under those conditions is almost non-existent.

*Defendants Terminate Plaintiff's Employment*

56.     On or about Sunday November 15, 2020, Plaintiff spoke with Deputy County Administrator Kelly Church. Ms. Church informed Plaintiff that the Chippewa County Board of Commissioners scheduled a special meeting to take place on November 18, 2020. Plaintiff asked if she should attend the meeting, and Ms. Church told her that she did not think that was necessary and implied that the meeting was related to COVID issues.

57.     Plaintiff was scheduled to take a week-long hunting vacation starting November 16, 2020 at a remote location with limited cell service and communication capability.

58.     Mr. German and other County officials were aware of Plaintiff's vacation, because, given her role and responsibilities, Plaintiff notifies relevant individuals when she is out of the office. Mr. German and others also knew that Plaintiff intended to go to her remote cottage to hunt and that Plaintiff has very limited cellular phone service while at her cottage.

59.     The Board of Commissioners held the special meeting on November 18, 2020 at 3:00 p.m., and it lasted for seven minutes and ten seconds. The full recording of the Board meeting can be found on the Chippewa County website, https://www.chippewacountymi.gov/copy-of-2015-meeting-minutes, and at https://www.youtube.com/watch?v=cK81xfQOa_4&feature=youtu.be  (last accessed on December 2, 2020).

60.     Following rollcall and approval of the agenda, Defendant Martin raised "new business, personnel issues" and made a motion to terminate Plaintiff's employment effective December 31, 2020. He then said, "any support for that?" to which Board member, Defendant Shackleton, said, "I'll support it."

61.     Defendant Martin then opened the issue to "discussion." The "discussion," what there was of it, lasted for only one minute and forty seconds, during which time Defendant Shackleton, Defendant Savoie, and Defendant Martin made the following brief comments:

- Mr. Shackleton said that "I certainly take no pleasure in this" and it is "always difficult," but for "various reasons" it appears to be in the best interest of the County and the people it serves to "go in a different direction" with "different leadership".

- Mr. Savoie said he echoed Mr. Shackleton's comment about needing to "go in another direction." He thanked Plaintiff for her years of service and directed the administration to fill her position as soon as possible.

- Chairman Martin then said it was a "very unpleasant experience" but that he too thought they need to go in a "different direction" with "different leadership."

62.     The motion to terminate Plaintiff's employment passed unanimously, with one Commissioner, Conor Egan, absent from the meeting.

63.     The only other matter on the agenda was COVID preparedness.

64.     No County official informed Plaintiff that her termination would be on the agenda for the special meeting and she was, as planned, hunting in a remote area at the time of the meeting. The Special Meeting Notice gave no indication of the meeting topic. Upon information and belief, this failure to inform and deliberately mislead Plaintiff, and indeed the public, about the nature of the meeting was an intentional and ultimately successful attempt to be sure that Plaintiff would not attend the meeting.

65.     Since Plaintiff was not present and had no notice of the planned topic of the meeting of her termination, Plaintiff was not given the opportunity to request a closed session to discuss the termination, or to make any presentation on her own behalf. Since the issue did not appear in any agenda published ahead of time, no member of the public had the opportunity to address the Commission, either.

66.     Given the lack of actual content and the brevity (less than two minutes) of the "discussion" at the meeting, it is clear the Board of Commissioners had discussed and decided the issue of Plaintiff's termination outside of and prior to the public meeting.

67.     Plaintiff learned of her termination when a co-worker called her on her cell phone during Plaintiff's vacation. Plaintiff had to return to her home where she

has better cell reception in order to be able to talk further and to find out what had happened.

68.     Plaintiff then received a letter from the Board dated November 18, 2020, stating,

Dear Ms. France:

The Chippewa County Board of Commissioners during Special Session on November 18, 2020 voted to terminate your at-will employment effective December 31, 2020. Per County Policy 240, you have the right to appeal this decision.

The Board thanked you for your time with Chippewa County and do wish you the best in future endeavors.

69.     The Chippewa County Board did not give any reasons for Plaintiff's termination, aside from the vague mentions of "going in a different direction" made at the special meeting.

70.     Chippewa County posted a job opening for the position of Chief Public Defender on November 19, 2020, one day after the special meeting and before Plaintiff was able to exercise her right to appeal.

71.     Plaintiff, via counsel, informed the Board that she intended to appeal the decision and asked for the specific form, timeline, and process for her appeal. Ms. Church told her only that she should appeal to the Board's Personnel Committee, but did not give any further details or explanation regarding the process for that appeal.

72.     Defendants confirmed on multiple occasions after the termination that Plaintiff's termination was without cause and that they would provide no reasons for their decision.

73.     Plaintiff's counsel delivered an appeal letter, as directed by Ms. Church, to the County's Personnel Committee detailing the evidence supporting the conclusion that Defendants actually chose to terminate Plaintiff's employment for unlawful reasons, as also detailed herein in this Complaint. The County's Personnel Committee held a public hearing to hear Plaintiff's appeal on December 10, 2020. After taking public comments, all of which were opposed to Plaintiff's termination, and hearing from Plaintiff's attorney, only one Commissioner made comments, in which he briefly stated that it was always difficult to fire someone and that it was unlikely that the Personnel Committee would undo a decision of the Board. He made no further substantive comments providing any reasons for the termination or regarding Plaintiff's arguments that the true motivations for the termination were unlawful. Another commissioner made a motion to uphold the termination, which then passed.

74.     Shortly prior to the beginning of the Personnel Committee public hearing, Plaintiff attempted to login and update her timesheet on the County's electronic system for employees. She was unable to access the timesheet program. Upon information and belief, the County was already taking steps to prior to the perfunctory appeal hearing to administratively effectuate Plaintiff's termination because its employees knew the outcome was predetermined.

75.     Plaintiff also, via counsel, informed the Board that she needed to make transition plans for her many clients, some of whom have significant upcoming proceedings in their criminal cases, including some jury trials scheduled for January and February 2021.

76.     Plaintiff is ethically obligated to represent her clients unless or until they can be transitioned to a new attorney without prejudicing the clients.

77.     Her clients have the constitutional right to effective counsel, and Chippewa County is required to provide that effective counsel.

78.     Through counsel, Plaintiff presented a transition plan to Defendants, outlining how they can protect the constitutional rights of indigent defendants in Chippewa County when Plaintiff's employment ends on December 31, 2020. Defendant County, through counsel, agreed that Plaintiff could proceed implementing this transition plan, which recognizes that there are some cases on which Plaintiff is counsel that she cannot ethically transfer to another lawyer because of the stage of representation or for other reasons. Thus far, and with only two weeks until Plaintiff's effective termination date, Defendants still have not committed to how they will compensate Plaintiff for her work on cases that cannot be transitioned without compromising the clients' rights to effective counsel.

79.     Currently, Plaintiff is the only attorney in the Public Defender's Office qualified under MIDC standards to represent defendants charged with felonies. The other attorney, Ms. Ball, has only been practicing criminal law for approximately six months.

80.     On or about December 14, 2020, upon information and belief, Defendant County offered the position of Chief Public Defender to a former employee of the Prosecutor's Office, hereafter known as "J.R." J.R. worked as an Assistant Prosecutor until, upon information and belief, the Prosecutor fired J.R. from that role approximately two years ago. Upon information and belief, J.R. does not have the required training or experience to take over the role of Chief Public Defender or to represent the approximate 230 indigent clients currently represented by Plaintiff. Further, J.R. will be conflicted out of representing multiple defendants because of his previous work in the Prosecutor's Office.

81.     According to the State Bar records of attorney discipline on its website, the Attorney Grievance Commission disciplined J.R. in 2002 with a reprimand for neglect of a client matter after J.R. entered plea of no contest in a negotiated resolution. Initially, the Attorney Grievance Commission charged J.R. with violations of Michigan Court Rules 9.104(1)-(4), and Michigan Rules of Professional Conduct 1.1(c); 1.2(a); 1.3; 1.4; 1.16(d); 3.2; 8.4(a) and (c).

82.     During a court proceeding on December 15, 2020, at which Plaintiff was representing a client, Circuit Court Judge James Lambros and County Prosecutor Rob Stratton made comments about how Plaintiff would no longer be representing her client as of January, despite Defendant County never informing Plaintiff that it hired J.R. and that, by inference, it may have no intention of honoring the transition plan that Plaintiff implemented after the County, through counsel, approved the plan.

## Count I - Violation of Right to Protected Speech Under the First Amendment to the U.S. Constitution – 42 U.S.C. § 1983 – as to all Defendants

83.     Plaintiff relies on the allegations of all prior paragraphs, as if they were restated herein.

84.     Plaintiff engaged in protected First Amendment speech when she complained of retaliation, harassment, and gender discrimination in June 2020.

85.     Plaintiff engaged in protected First Amendment speech when she complained of Mr. German's inappropriate telephone call to Ms. Ball.

86.     Plaintiff engaged in protected First Amendment speech when she reported harassment and discrimination to Mr. Evashevski and when she participated in his investigation. She likewise engaged in protected speech when she told Mr. Evashevski that Mr. German was sometimes intoxicated while working.

87.     Plaintiff engaged in protected First Amendment speech when she objected to court proceedings taking place on Zoom videoconference without being streamed online for public viewing and without consideration for the public's access to court proceedings.

88.     Defendants terminated Plaintiff's employment without following its own policy of progressive discipline and, indeed, without giving any reason for her termination at all.

89.     Defendants' decision to terminate Plaintiff's employment was a result of Plaintiff engaging in protected First Amendment speech.

90.     Defendants' termination of Plaintiff's employment in retaliation for Plaintiff's protected First Amendment speech violated the First Amendment of the U.S. Constitution.

91.     As a result of Defendants' violation of the First Amendment, Defendants are liable to Plaintiff for damages, including lost wages and benefits; compensatory damages for emotional and mental distress; attorney fees and costs; and punitive damages.

WHEREFORE, Plaintiff requests that the Court grant her judgment against Defendants including the following relief: (1) an award of lost wages and benefits; (2) an award of future loss wages and benefits; (3) reinstatement to her job position; (4) compensatory damages for emotional and mental distress; (5) punitive damages in an amount as determined by a jury; plus (6) interest and costs, including reasonable attorney's fees pursuant to 42 U.S.C. § 1988, and any other relief deemed necessary and proper by the Court.

## Count II – Violation of WPA – as to all Defendants

92.     Plaintiff incorporates the allegations of all prior paragraphs as if set forth herein.

93.     Defendants violated the WPA when they terminated Plaintiff's employment because she reported the conflict of interest outlined in Paragraph 38 to the State Bar of Michigan, a conflict of interest which violates the Michigan Rules of Professional Conduct and the constitutional rights of defendants.

94.     Defendants violated the WPA when they terminated Plaintiff's employment because she reported to Judge Blubaugh, Mr. German, and Ms. Ojala that the County's arraignment procedures violate court rules, state law, and federal constitutional law.

95.     Defendants violated the WPA when they terminated Plaintiff's employment because she reported unlawful sex discrimination to Mr. Evashevski and when she participated in his investigation.

96.     Defendants violated the WPA when they terminated Plaintiff's employment because she reported to Ms. Ojala, SCAO, and MIDC that court proceedings were taking place on Zoom videoconference without being streamed online for public viewing and without consideration for the public's access to court proceedings. Denying the public access to view court proceedings violates court rules and state law.

97.     As a result of the foregoing, Plaintiff lost earnings and benefits and future earnings and benefits and suffered mental anguish, emotional distress, unfair reputational damage, and undue harm to her career, as well as incurred attorney fees, for which Defendants are liable.

WHEREFORE, Plaintiff requests that the Court grant her judgment against Defendants including the following relief: (1) an award of lost wages and benefits; (2) an award of future loss wages and benefits; (3) reinstatement to her job position; (4) compensatory damages for emotional and mental distress; (5) punitive damages in an amount as determined by a jury; plus (6) interest and costs, including

reasonable attorney's fees, and any other relief deemed necessary and proper by the Court.

<u>Count III – Violation of ELCRA – Retaliation – as to all Defendants</u>

98.    Plaintiff incorporates the allegations of all prior paragraphs as if set forth herein.

99.    Defendants violated the ELCRA when it terminated Plaintiff's employment because she reported sex discrimination in June and again in July 2020.

100.   As a result of the foregoing, Plaintiff lost earnings and benefits and future earnings and benefits and suffered mental anguish, emotional distress, unfair reputational damage, and undue harm to her career, as well as incurred attorney fees, for which Defendants are liable.

WHEREFORE, Plaintiff requests that the Court grant her judgment against Defendants including the following relief: (1) an award of lost wages and benefits; (2) an award of future loss wages and benefits; (3) reinstatement to her job position; (4) compensatory damages for emotional and mental distress; (5) punitive damages in an amount as determined by a jury; plus (6) interest and costs, including reasonable attorney's fees, and any other relief deemed necessary and proper by the Court.

<u>Count IV – Violation of Open Meetings Act – as to all Defendants</u>

101.   Plaintiff incorporates the allegations of all prior paragraphs as if set forth herein.

102.    Michigan's OMA requires that "All decisions of a public body must be made at a meeting open to the public." Mich. Comp. Laws § 15.263.

103.    The Chippewa County Board of Commissioners is a public body within the meaning of the OMA. Mich. Comp. Laws § 15.262.

104.    Defendants intentionally violated the OMA by making the decision to terminate Plaintiff outside of an open public meeting. The one-minute and forty-second perfunctory remarks at the November 18, 2020 Board meeting clearly demonstrate that the Board had already made the decision to terminate Plaintiff's employment and that its orchestrated "discussion" and vote on the matter was merely a formalization of its previously-made decision.

105.    Per Mich. Comp. Laws § 15.273, because of its intentional violation of the OMA, Defendants are liable to Plaintiff for actual and exemplary damages of up to $500.00, plus court costs and actual attorney fees.

WHEREFORE, Plaintiff requests that the Court grant her judgment against Defendants including the following relief: (1) an award of $500; (2) court costs and reasonable attorney's fees, and (3) and an order invalidating the Board's decision to terminate Plaintiff's employment because it was made in violation of the OMA.

## Count V – Breach of Contract – as to all Defendants

106.    Plaintiff incorporates the allegations of all prior paragraphs as if set forth herein.

107.    Defendants breached the terms and conditions of the employment contract with Plaintiff by providing her with only a sham appeal under Policy #240.

108.    The appeal that Defendants provided to Plaintiff was a sham appeal because Defendants had no intention at any time of reconsidering the decision, as evidenced by multiple circumstances, including that they posted the permanent job position the very day after initially voting to terminate her, by taking steps to effect the termination prior to conclusion of Plaintiff's termination appeal like cutting off Plaintiff's access to electronic systems as an employee, and by one Commissioner's public comment that the Personnel Committee would not really undo the decision of the full Board.

109.    The appeal that Defendants provided to Plaintiff also failed to comply with Policy #240 and was a sham appeal because Defendants repeatedly refused to state any reasons or justifications for abruptly terminating Plaintiff's employment without warning, thereby providing her no way to refute or counter whatever their reasons are.

110.    Defendants also violated Policy #240 by failing to use a progressive discipline system, and indeed stating that they are terminating Plaintiff completely without cause, and by firing her for unlawfully-motivated reasons.

111.    The County's offer of Policy #240 was a critical and material part of the terms and conditions of employment which the County unilaterally changed after the 2018 Lawsuit to include an arbitration clause. All of the terms and conditions of employment formed an entire package of benefits and protections that Defendants offered to the County's employees when each employee had to make a decision either to acquiesce to the arbitration clause or lose their job.

112.   By effecting an anticipatory breach of a material term of the employment contract with Plaintiff – the right to a fair and actual appeal of a decision to terminate her which necessarily would provide stated, legitimate reasons under the progressive discipline policy for the termination decision – Plaintiff has no obligation to fulfill certain obligations under that contract either, namely the arbitration clause imposed by Defendants.

WHEREFORE, Plaintiff Jennifer France demands a declaratory judgment against Defendants that Defendants effected an anticipatory breach of a material term of her employment contract with Plaintiff, and that the arbitration clause of the terms and conditions of Plaintiff's employment is null and void, plus such other relief as this Court deems just, proper, and equitable.

## Count VI – Termination of Employment in Violation of Michigan's Public Policy – as to all Defendants

113.   Plaintiff incorporates the allegations of all prior paragraphs as if set forth herein.

114.   Defendants' termination of Plaintiff violated Michigan public policy because Defendants did so in retaliation for Plaintiff's repeated good faith efforts to reasonably discharge her duties as an attorney and for her protected First Amendment speech.

115.   Michigan's public policy requires that attorneys comply with the State Bar's Ethics Rules for the good of the general public and for the enforcement of critical rights of defendants charged with crimes, as found in both the U.S. and Michigan Constitutions.  This is particularly true with respect to the duties of an

attorney representing an individual charged with a crime or in a related proceeding, like a parole violation charge, given that the individual is faced with potential loss of liberty.

116.    State law gives the State Bar and Attorney Grievance Commission the power to discipline an attorney who violates the Ethics Rules, up to and including loss of her license to practice law.

117.    An attorney who does not provide legal counsel which rises to the level of "effective assistance of counsel" pursuant to the Sixth Amendment to the U.S. Constitution, as that term has been defined by case law, may be subject to civil liability.

118.    By terminating Plaintiff under the conditions as stated aforesaid, Defendants violated Michigan public policy, a common law tort under Michigan law.

119.    As a result of the foregoing, Plaintiff lost earnings and benefits and incurred mental anguish, emotional distress, unfair reputational damage, legal costs, and undue damage to her career for which Defendants are liable.

WHEREFORE, Plaintiff Jennifer France demands judgment against Defendants for any and all economic and non-economic compensatory damages for whatever amount the jury finds necessary, a Court order for reinstatement to her job position, and judgment against Defendants for exemplary damages for whatever amount the jury finds necessary, plus the costs of this action, attorneys' fees, interest and such other relief as this Court deems just, proper and equitable.

PINSKY, SMITH, FAYETTE & KENNEDY, LLP
Attorneys for Plaintiff Jennifer France

Dated: December 16, 2020        By:___/s/ Sarah R. Howard_____
                                Sarah Riley Howard
                                Erin L. Dornbos
                                146 Monroe Center St NW, Suite 805
                                Grand Rapids, MI  49503
                                (616) 451-8496

## JURY DEMAND

To the extent that jury trial is available as to any of the issues set forth

above, Plaintiff hereby demands same.

PINSKY, SMITH, FAYETTE & KENNEDY, LLP
Attorneys for Plaintiff

Dated: December 16, 2020        By:___/s/ Sarah R. Howard_____
                                Sarah Riley Howard
                                Erin L. Dornbos
                                Business Address and Telephone Number:
                                    146 Monroe Center St NW, Suite 805
                                    Grand Rapids, MI  49503
                                    (616) 451-8496