UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

_____

JENNIFER FRANCE,
on behalf of herself and as
next friend of certain defendants                     Case No. 2:20-CV-248
represented by the Chippewa
County Public Defender's Office,                      HON. GORDON J. QUIST

        Plaintiff,

v.

CHIPPEWA COUNTY, et al.,

        Defendants.
_____/

## OPINION

This case arises from the termination of Plaintiff Jennifer France's employment as the Chief Public Defender for Chippewa County, Michigan. France brings this action, on behalf of herself and as next friend of certain defendants represented by the Chippewa County Public Defender's Office (collectively the "Former Clients"), against Chippewa County, Jim Martin, Don McLean, Robert Savoie, and Scott Shackleton, (collectively the "County Defendants"), and the Honorable James P. Lambros and the Honorable Eric Blubaugh, (collectively the "Judge Defendants"). On February 23, 2021, U.S. Magistrate Judge Maarten Vermaat issued a Report and Recommendation (R & R), recommending that the Court deny France's request for a temporary restraining order.  (ECF No. 38.)  France has filed objections.  (ECF No. 40.)  In addition, the Judge Defendants have filed a motion to dismiss, (ECF No. 33), and the County Defendants have filed a motion to dismiss and to strike.[1]  (ECF No. 36.)  The parties have extensively briefed the

---

[1] The Court initially referred these motions to Magistrate Judge Vermaat but has recalled the referrals.

issues. (ECF Nos. 16, 17, 20, 22, 30, 31, 32, 33, 37, 39, 40, 41, 42, 43.) Having reviewed the record, the Court finds that a hearing is not necessary.  *See* W.D. Mich. LCivR 7.2(d).  For the reasons stated below, the Court (1) grants the Judge Defendants' motion to dismiss; (2) grants in part and denies in part the County Defendants' motion to dismiss and to strike; and (3) adopts the R & R and denies France's motion for a temporary restraining order.

## BACKGROUND

The R & R adequately describes France's allegations and the procedural posture of this case.  To summarize, France was previously employed as the Chief Public Defender in Chippewa County. In November 2020, the Board of Commissioners of Chippewa County voted to terminate France's employment effective December 31, 2020.  On December 16, 2020, France filed the original complaint against the County Defendants. She alleged a First Amendment retaliation claim and several state law claims.  On December 17, 2020, the Board voted to hire James Robinson, a former prosecutor in Chippewa County, as the new Chief Public Defender.  According to France, she immediately reached out to Robinson to discuss client files and to set up a transition process.  France says that Robinson was not responsive to her communications.  As France became more concerned with the transition process, France's counsel in the instant case emailed defense counsel regarding the transition, but France's counsel was not satisfied with the response.  Because France did not know which clients (if any) she would continue to represent, she sent a letter to all of her clients on December 30, 2020, informing them that it was her last day at the public defender's office and that she was unable to tell them if she would continue to represent them. That same day, France also sent Robinson a list of pending cases that, because of work she had put in, she should continue as counsel.  No cases were assigned to France.

Because France was no longer going to be the public defender as of January 1, 2021, on December 23, 2020, the Judge Defendants signed administrative orders replacing France with Robinson as counsel of record effective as of January 1, 2021. France alleges that she did not learn of the administrative orders until January 4, 2021. She further alleges that Robinson cannot provide effective assistance of counsel to some of the Former Clients because of his past employment at the prosecutor's office and, according to France, Robinson does not have the necessary training and experience.[2]   In subsequent briefing, France alleges that Robinson has failed to meet with certain unnamed defendants, failed to file an interlocutory appeal requested by an unnamed defendant, and adjourned a trial without the consent of an unnamed defendant. In one case, Robinson allegedly told a defendant that certain discovery did not exist. The defendant subsequently contacted France, who told the defendant that Robinson was wrong and that the discovery does in fact exist.  France has also submitted an affidavit from a former legal assistant at the public defender's office. The legal assistant, who quit on March 5, 2021, states that Robinson cannot handle all of the cases and that she has had "serious concerns for the clients of the office, particularly those with complicated, capital cases." (ECF No. 40-1 at PageID.406.)  The legal assistant also claims that Robinson has not contacted some of the Former Clients and "other people" have observed him unprepared in court on Zoom.  (*Id.* at PageID.407.)

On January 8, 2021, France filed the eight-count amended complaint.  Three of the counts are relevant to the pending motions. In Counts II and III, France, on behalf of the alleged Former Clients, asserts due process and effective assistance of counsel claims.  She seeks "(1) injunctive relief enjoining Defendants from replacing [France] as attorney for defendants for whom her representation is required in order to ensure their federal Constitutional rights are protected; (2)

---

[2] Robinson's role as a former prosecutor raises ethical issues as to which clients he can represent. *See* MRPC 1.11; *see also* Michigan Ethics Opinion RI-253 (Dec. 21, 1992).

appointment of a Special Master to objectively evaluate what clients [France] is required to continue to represent in order for her to comply with the Michigan Rules of Professional Conduct and to protect the defendants' rights and to order how that [France] will be contracted and paid for her continued representation of certain clients[; and] reasonable attorney's fees, and any other relief deemed necessary and proper by the Court." (ECF No. 7 at PageID.81, 83.)  In Count VIII, France alleges that the termination of her employment violated Michigan's Public Policy.

On the same date France filed her amended complaint, she filed an *ex parte* motion for temporary restraining order seeking to enjoin the administrative orders that replaced her as counsel of record "until the State Court Administrator's Office ("SCAO") and/or similar other state agency or court has had adequate time and opportunity to review the matter and implement measures to prevent the denial of Clients' federal Constitutional rights and determine [France's] continuing obligations to Clients, if any[.]" (ECF No. 8 at PageID. 105.)  She also sought to enjoin the County Defendants "from taking any actions to prejudice the federal Constitutional rights of the [Former] Clients." (*Id.*) The Court denied France's request to the extent France sought relief *ex parte*, (ECF No. 11), and referred the motion to Magistrate Judge Vermaat. Magistrate Judge Vermaat issued a thorough R & R, recommending that the Court deny France's request for injunctive relief on the ground that the requested relief is barred by abstention pursuant to *Younger v. Harris,* 401 U.S. 37, 44, 91 S. Ct. 746 (1971), and fails to meet the specificity requirement of Fed. R. Civ. P. 65(d)(1)(B) and (C).  (ECF No. 38.)

The Judge Defendants have filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) in which they argue that (1) the Court lacks subject-matter jurisdiction over this

matter due to the *Rooker-Feldman* doctrine;[3] (2) France's claims for injunctive and declaratory relief are barred by *Younger* abstention; (3) France does not have standing to assert the claims on behalf of the Former Clients; (4) the Judge Defendants have absolute immunity; and (5) France has failed to state a claim. (ECF No. 33.)  Pursuant to 42 U.S.C. § 1988(b), the Judge Defendants also seek costs and attorney's fees for defending this case.

The County Defendants have filed a motion to dismiss Counts II, III, and VIII and to strike three paragraphs in the amended complaint because the paragraphs improperly reference information about settlement negotiations. (ECF No. 36.)[4] In addition to adopting the standing argument advanced by the Judge Defendants on Counts II and III, the County Defendants argue that Count VIII should be dismissed because France's other claims preempt the state law public policy claim.

### DISCUSSION

### I.      Counts II and III: Due Process and Effective Assistance of Counsel

In Counts II and III, on behalf of Former Clients, France alleges due process and effective assistance of counsel claims against Defendants.  This Court holds that France does not have standing to bring these claims on behalf of Former Clients.  And even if France had standing, the Court agrees with the magistrate judge's recommendation that the requested relief is barred by *Younger* abstention.[5]

---

[3] *See District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 103 S. Ct. 1303 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 44 S. Ct. 149 (1923).

[4] Although the County Defendants filed a motion to dismiss under Fed. R. Civ. P 12(b)(6), the Court considers the motion as a motion for judgment on the pleadings under Fed. R. Civ. P 12(c) because they filed an answer, (ECF No. 34), before filing the motion to dismiss. *See Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 437 n.1 (6th Cir. 1988). The legal standard remains the same. *Id.*

[5] Because the Court finds that France does not have standing and that *Younger* abstention applies, the Court will not address whether the *Rooker-Feldman* doctrine applies, whether France fails to state a claim, and whether the Judge Defendants have judicial immunity.

## A. Standing

"Standing is a threshold issue for bringing a claim in federal court and must be present at the time the complaint is filed." *Moody v. Michigan Gaming Control Bd.*, 847 F.3d 399, 402 (6th Cir. 2017). Generally, a plaintiff may assert only her own legal rights and interests. *Kowalski v. Tesmer*, 543 U.S. 125, 129, 125 S. Ct. 564, 567 (2004). Third-party standing is the "rare" exception to the general rule. *Crawford v. United States Dep't of Treasury*, 868 F.3d 438, 455 (6th Cir. 2017). "A plaintiff may raise a constitutional claim on behalf of a third party if [s]he can prove (1) injury-in-fact to the plaintiff, (2) a close relationship between the plaintiff and the third party whose rights [s]he asserts, and (3) a hindrance preventing the third party from raising his [or her] own claim." *Moody*, 847 F.3d at 402.  "The party invoking federal jurisdiction bears the burden of establishing" that she has standing to sue. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61, 112 S. Ct. 2130, 2136 (1992).

Whether France has a sufficiently close relationship with the Former Clients is a close call. The Supreme Court has held that an existing attorney-client relationship is a sufficiently close relationship, s*ee Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617, 109 S. Ct. 2646 (1989); *Department of Labor v. Triplett*, 494 U.S. 715, 110 S. Ct. 1428 (1990), while a hypothetical attorney-client relationship in the future is not a sufficiently close relationship, *Kowalski,* 543 U.S. at 130, 125 S. Ct. at 568.

This case presents an unusual situation where France had attorney-client relationships with the Former Clients, but these relationships have ended. The closeness of the relationships is further removed because the Former Clients are now represented by Robinson or, in at least one case, an attorney other than France or Robinson. (ECF No. 39 at PageID.390.)  Some of the Former Clients may still want France to represent them. In fact, according to France, some of the Former Clients

6

have retained France as their lawyer despite being indigent.  Other Former Clients may not want France to represent them. The issue is further complicated by the information the parties can disclose without violating the attorney-client privilege.  Given the unique circumstances in this case, the former attorney-client relationship may be a sufficiently close relationship.

Assuming that France has a sufficiently close relationship with the Former Clients, she has not shown an injury-in-fact. An injury-in-fact is "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) 'actual or imminent, not "conjectural" or "hypothetical."'" *Lujan*, 504 U.S. at 560, 112 S. Ct. at 2136 (citations and footnote omitted). France claims that she is at risk of being sanctioned for professional ethic rules violations. But the alleged risk of sanctions does not rise to the level of "credible threat of prosecution." *See Planned Parenthood Ass'n v. Cincinnati*, 822 F.2d 1390, 1396 (6th Cir. 1987).  As the magistrate judge explained, France is unlikely to face sanctions under the Michigan Rules of Professional Conduct. (ECF No. 38 at PageID.358 n.11.)  And France has cited no authority establishing that any attorney has ever been sanctioned in a similar situation—where the attorney was fired and a state court judge replaced the terminated attorney as counsel of record.  That France will be sanctioned and disbarred is simply implausible and not a "credible threat."

In her response to the motion to dismiss, France argues that she is also injured because "she *should* be receiving the hourly contract attorney rate of pay for her continued representation of certain Clients." (ECF No. 39 at PageID.371.)  This case is distinguishable from other cases wherein a medical provider would have been paid for performing medical services if not for an unconstitutional statute. *See Singleton v. Wulff*, 428 U.S. 106, 113, 96 S. Ct. 2868, 2873 (1976). The Supreme Court has found that an attorney's financial stake in a third-party's claim can be a sufficient injury-in-fact. *See Caplin*, 491 U.S. at 623 n.3, 109 S. Ct. at 2651 n.3. In that case, the

Supreme Court noted that the attorney's stake in forfeited assets that he "would almost certainly receive" if the claims were successful was a sufficient injury-in-fact.  *Id.*  But there is no such certainty in the instant case. Any right to payment ceased on December 31, 2020, when France's employment as Chief Public Defender ended.  France admits that she could represent the Former Clients *pro bono* but that she is not in a financial position to do so.  As mentioned above, some of the Former Clients have retained France and are, presumably, paying her a fee already. France essentially acknowledges the lack of certainty by requesting the Court "to order how that [sic] France will be contracted and paid for her continued representation of certain clients."  (ECF No. 7 at PageID.81, 83.)   In other words, France has not shown that she "would almost certainly receive" any payment had she remained as counsel of record on each Former Client's case.

Similarly, France has not alleged any hinderance preventing the Former Clients from raising their own claims and protecting their own constitutional rights.  "Determining the existence of a hindrance requires examining 'the likelihood and ability of the third parties . . . to assert their own rights.'"  *Moody*, 847 F.3d at 402 (quoting *Powers v. Ohio*, 499 U.S. 400, 414, 111 S. Ct. 1364 (1991)). "Courts have found the following to constitute a hindrance that keeps a third party from protecting his or her own rights: deterrence from filing suit due to privacy concerns, imminent mootness of a case, or systemic practical challenges to pursuing one's own rights." *Moody*, 847 F.3d at 402-03 (citations omitted).  France argues that the Former Clients are hindered because they lack factual and legal knowledge to assert their own rights.  The Supreme Court rejected a similar argument in *Kowalski*. There, the Supreme Court denied third-party standing to attorneys who brought a constitutional challenge to a state law that denied indigent criminal defendants an automatic right to state-provided counsel on appeal. *Kowalski*, 543 U.S. at 129, 125 S. Ct. at 567. The Court reasoned that an indigent defendant had several open avenues to challenge the denial of

appellate counsel, including direct appeal in the state court and collateral review in both state and federal court. *Id.* While an attorney may be "valuable" to assist an unsophisticated *pro se* defendant, the Supreme Court held that this was not the type of hinderance necessary to allow another to assert the indigent defendants' rights. *Id.*

Like the indigent criminal defendants in *Kowalski*, the Former Clients have several avenues to raise their due process and effective assistance of counsel concerns.  First, the Former Clients could raise their concerns with their newly appointed counsel, Robinson, who is an active member in good standing of the State of Michigan Bar.  If this is unsuccessful, the Former Clients can file *pro se* pleadings with the state trial court. This federal court routinely receives *pro se* motions in which a criminal defendant complains about appointed counsel. Often times, these motions are granted. In addition, if the Former Clients are not satisfied with Robinson's representation at the conclusion of the case, they will be able to raise those claims on direct appeal in state court and on collateral review in state and federal courts.[6] Contrary to France's argument, the Former Clients can raise their concerns to the state court judges without "accusing them of acting to violate their constitutional rights." (ECF No. 40 at PageID.400.) Furthermore, regardless of the forum, the Former Clients will have to reveal certain information about their cases in order to prevail on their effective assistance of counsel claims. And even if France may be "valuable" in assisting the Former Clients in litigating their claims, this is not the type of hinderance to allow third-party standing.[7]

---

[6] As explained below, the Court finds that *Younger* abstention also bars France's requested relief. But if *Younger* abstention does not apply, there is nothing preventing the Former Clients from filing their own § 1983 lawsuits. Thus, the Former Clients would have another avenue to litigate their due process and effective assistance of counsel claims.

[7] France also has avenues to address her concerns. For example, as France has done in the past, she can report ethical violations by another attorney or judge to the Michigan State Bar and the Michigan Indigent Defense Commission. (ECF No. 7 at PageID.59.)

Ultimately, this case shows why third-party standing is "rare." *See Crawford*, 868 F.3d at 455. By bringing this suit on behalf of her Former Clients, France assumes that each Former Client would like France to represent him or her. This Court will not make such an assumption. Each individual Former Client should have the opportunity to raise his or her own rights if he or she chooses to do so. The state trial court where the criminal cases are pending is best positioned to assess which attorney should represent a state criminal defendant.

### B. *Younger* Abstention

Even if France had standing to assert these claims on behalf of her Former Clients, her claims for injunctive, equitable and declaratory relief are barred by *Younger* abstention. In *Younger,* the Supreme Court reaffirmed "the fundamental policy against federal interference with state criminal prosecutions." 401 U.S. at 46, 91 S. Ct. at 751. "When a federal court is asked to interfere with a pending state prosecution, established doctrines of equity and comity are reinforced by the demands of federalism, which require that federal rights be protected in a manner that does not unduly interfere with the legitimate functioning of the judicial systems of the States." *Kugler v. Helfant*, 421 U.S. 117, 123, 95 S. Ct. 1524, 1530 (1975). Federal courts may abstain from hearing a federal claim if "(1) state proceedings are currently pending; (2) the proceedings involve an important state interest; and (3) the state proceedings will provide the federal plaintiff with an adequate opportunity to raise his constitutional claims." *Doe v. Univ. of Kentucky*, 860 F.3d 365, 369 (6th Cir. 2017) (citing *Middlesex City Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432, 102 S. Ct. 2515, 2521 (1982)).

The magistrate judge recommended that the Court deny France's motion for a temporary restraining order based on *Younger* abstention. France has filed objections. Upon receiving an objection to the R & R, the district judge "shall make a de novo determination of those portions of

10

the report or specified proposed findings or recommendations to which objection is made."  28 U.S.C. § 636(b)(1).  This Court may accept, reject, or modify any or all of the magistrate judge's findings or recommendations. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). After reviewing the R & R, the objections, and the pertinent part of the record, the Court adopts the magistrate judge's *Younger* abstention analysis.

The magistrate judge identified the correct legal standard and correctly found that the three *Middlesex* factors support abstention. First, the Former Clients have pending state criminal cases. Second, the proceedings involve important state interests. (ECF No. 38 at PageID.350 (citing *Younger*, 401 U.S. at 43, 91 S. Ct. at 750; *Parker v. Turner*, 626 F.2d 1, 8 (6th Cir. 1980).)  Third, the Former Clients have an adequate opportunity to raise the constitutional claims in state court. (*Id.* at PageID.350-351 (citing *People v. Ginther*, 390 Mich. 436, 441-42; 212 N.W.2d 922, 924 (1973).)

France argues that the requested relief does not interfere with the state criminal proceedings because the federal questions are not entangled with the merits of the state criminal proceedings. In support of this argument, France cites *Alexander v. Rosen*, 804 F.3d 1203 (6th Cir. 2015). *Alexander* does not help France. After finding that the federal question did not entangle with the merits of the state child support proceedings, the Sixth Circuit stated: "And unlike other cases where we have abstained from addressing child support issues, Alexander does not ask us to regulate 'the day-to-day conduct of state hearings,' assess the constitutionality of procedures used in those hearings, or opine on the merits of the child support determination." *Id.* at 1207.

France asks this federal court to step in and manage the Chippewa County state courts criminal docket. To grant France's requested relief, this federal court would have to evaluate and/or make rulings in the following areas:

1.  Whether Robinson is a competent lawyer—case-by-case;

2.  To review counsel appointments by the Judge Defendants;

3.  Whether Robinson made sufficient investigations of his pending cases;

4.  Whether Robinson is complying with his constitutional and ethical obligations—case-by-case;

5.  Whether there are conflicts of interest among indigent defendants; and

6.  What information can be gleaned from indigent defendants without violating attorney-client privilege and make rulings regarding the privilege—case-by case.

Unlike the cases cited by France that involved discrete issues and affected one case, France's requested relief interferes with dozens of cases—up to 250 cases but the exact number is unknown because France has not told the Court.  The interference with the state courts in this case is unlike any other case.  "This case requires the sort of unduly intrusive inference with pending state case[s] . . . that typically justifies *Younger* abstention."   *Id.* (citation omitted).  Accordingly, the Court finds that *Younger* abstention bars France's requested relief.

**C.  Attorney's Fees**

The Judge Defendants also request fees under 42 U.S.C. § 1988(b).  "An award of attorney fees against a losing plaintiff in a civil rights action is an extreme sanction, and must be limited to truly egregious cases of misconduct." *Riddle v. Egensperger*, 266 F.3d 542, 547 (6th Cir. 2001) (internal quotation marks omitted).  "[A] plaintiff should not be assessed his opponent's attorney's fees unless a court finds that his claim was frivolous, unreasonable, or groundless, or that the plaintiff continued to litigate after it clearly became so." *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 421 (1978). The Court will not award attorney's fees to the Judge Defendants in the instant case because there was no misconduct by France and the claims, although dismissed, were not frivolous, unreasonable, or groundless.

12

II.      **Count VIII: Termination of Employment in Violation of Public Policy**

In Count VIII, France alleges that the termination of her employment violated Michigan's public policy.  The County Defendants argue that the public policy claim should be dismissed because it "is adequately handled under actual statutory provisions." (ECF No. 37 at PageID.334.) In Michigan, an employer is not free to discharge an employee when that discharge would be contrary to public policy. *McNeil v. Charlevoix Cnty.*, 484 Mich. 69, 79, 772 N.W.2d 18, 24 (2009). "An at-will employee's discharge violates public policy if any one of the following occurs: (1) the employee is discharged in violation of an explicit legislative statement prohibiting discharge of employees who act in accordance with a statutory right or duty; (2) the employee is discharged for the failure or refusal to violate the law in the course of employment; or (3) the employee is discharged for exercising a right conferred by a well-established legislative enactment." *Id.*  "Where a statute prohibits the conduct at issue, 'Michigan courts have consistently denied a public policy claim.'" *Briggs v. Univ. of Detroit-Mercy*, 22 F. Supp. 3d 798, 807 (E.D. Mich. 2014) (quoting *Dudewicz v. Norris-Schmid, Inc.*, 443 Mich. 68, 503 N.W.2d 645, 650 (1993)).

Having reviewed the amended complaint, the Court is satisfied at this time that some of the alleged conduct related to her responsibilities under the Michigan Indigent Defense Commission, (ECF No. 41 at PageID.426-430), may not be "adequately handled under actual statutory provisions."  For example, if a County Defendant, successfully or not, attempted to cause France to violate her ethics and duties as a county public defender, France's discharge for refusing to violate these responsibilities under the Michigan Indigent Defense Commission would not be covered in her other claims. Therefore, the Court denies the County Defendants' motion to dismiss France's public policy claim.

### III.     Motion to Strike

The County Defendants move to strike three paragraphs from the amended complaint and a letter that references negotiations of a transition plan. The County Defendants argue that the reference to negotiations of a transition plan violate Fed. R. Evid. 408.  At the pleading stage, the court may "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "Motions to strike are viewed with disfavor and are not frequently granted." *Operating Engineers Local 324 Health Care Plan v. G & W Const. Co*., 783 F.3d 1045, 1050 (6th Cir. 2015). Fed. R. Evid. 408 prohibits evidence of offers to settle and evidence of conduct or statements from settlement negotiations.  *Eid v. Saint-Gobain Abrasives, Inc.*, 377 F. App'x 438, 443-44 (6th Cir. 2010). It is not clear, however, that the negotiations of a transition plan implicate Fed. R. Evid. 408. Therefore, the County Defendants' request to strike is denied at this time.

### CONCLUSION

Accordingly, the Court grants the Judge Defendants' motion to dismiss; grants in part and denies in part the County Defendants' motion to dismiss and to strike; and adopts the R & R and denies France's motion for a temporary restraining order. Counts II and III are dismissed without prejudice. *See Thompson v. Love's Travel Stops & Country Stores, Inc,* 748 F. App'x 6, 11 (6th Cir. 2018) ("[D]ismissal for lack of subject matter jurisdiction should normally be without prejudice."); *Hyman v. City of Louisville*, 53 F. App'x 740, 744 (6th Cir. 2002) (directing the district court to dismiss plaintiff's claim without prejudice for lack of standing).

A separate order will issue.

Dated: April 22, 2021                                            /s/ Gordon J. Quist
                                                                        GORDON J. QUIST
                                                                        UNITED STATES DISTRICT JUDGE